UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE THE JOYCE C. DALTON TRUST

================================

| | |
|---|---|
| COLLEEN BARRINGER, as guardian of and on behalf of Andrea Dalton, beneficiary, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| WELLS FARGO BANK, N.A., Former Co-Trustee, | ) ) ) |
| Defendant. | ) ) |

Case No. 4:20CV1406 JCH

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss

or, in the Alternative, for Appointment of a Guardian ad Litem, filed October 7, 2020.  (ECF No. 9).

The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

In or about 1988, Joyce C. Dalton ("Mrs. Dalton") created a Revocable Living Trust (the

"Trust").  (Petition (hereinafter "Complaint" or "Compl."), ECF No. 7, ¶ 2).  On January 19, 1998,

Mrs. Dalton executed a Total Restatement of Revocable Trust Agreement for Joyce C. Dalton.  (*See*

Total Restatement of Revocable Trust Agreement, attached to Plaintiff's Complaint as Exh. A, ECF

No. 7-1).  As relevant here, Mrs. Dalton provided that her children born before the date of the Trust

included Andrea B. Dalton ("Andrea") and Arthur R. Dalton, Jr.  (*Id.*, Article I(A)).  Mrs. Dalton

---

1 The majority of the Court's background section is taken from Plaintiff's Complaint, to which
Defendant has not yet filed an answer.

named A.G. Edwards Trust Company[2] and her attorney, David P. Oetting ("Mr. Oetting"), to be co-trustees upon her death, incapacity or resignation.  (*Id.*, Article II(B), (C)).  After providing for Mrs. Dalton during her lifetime and paying certain expenses, taxes and cash legacies, the Trust provided as follows:

### Article VI.    Residue

A.    I give the Residue of the Trust Fund, real and personal, wherever located, including any property mentioned above but not effectively disposed of, to my Descendants who survive me, per stirpes, subject, however, to the provisions of the Descendants' Trusts.

### Article VII.    General Provisions Re Descendants' Trusts.    Whenever property passes to my Descendants subject to the provisions of the Descendants' Trusts, to the extent provided in this Article the property shall not pass outright, but instead shall be held by the Trustees under this Agreement in accordance with the following directions:

A.    Such property shall be held in the Descendants' "Single Trust" if at the time in question the term for that trust as applied to that property has not yet expired.

### Article VIII.  Single Trust for Descendants.    The Descendants' Single Trust shall have these terms:

A.    During the Single Trust term:

1.    As much of the net income and/or principal of the trust as the Trustees may from time to time determine shall be distributed to such one or more of my Children and Descendants of any deceased Child of mine, in such amounts or proportions, as the Trustees may from time to time select, for the recipient's health, education, support in his or her accustomed manner of living, or maintenance.

2.    As much of the net income and/or principal of the trust as the Trustees (excluding, however, any "Interested Trustee") may from time to time determine shall be distributed to such one or more of my Children and Descendants of any deceased Child of mine, in such amounts or proportions, as the Trustees (excluding, however, any Interested Trustee) may from time to time select, for any purpose.

---

2 Defendant is a successor-by-acquisition to A.G. Edwards Trust Company, the original corporate trustee of the Trust.  (*See* Compl., P. 1 n. 1).

3.      Any net income not so distributed shall be accumulated and from time to time shall be added to principal.

4.      Without limiting the Trustees' discretion, I want the Trustees to know that, to the extent consistent with the foregoing, it would not be contrary to my intent for the Trustees to regard the needs of my daughter, ANDREA B. DALTON, who is mentally and physically deficient and who is residing in a special care facility as more important than those of my son or his Descendants.[3]

5.      ANDREA who is an adult qualifies to receive government assistance because of her above condition.  Without limiting the Trustees' discretion, I want the Trustees to know that, to the extent consistent with the foregoing, it would not be contrary to my intent for the Trustees to make available to ANDREA or for her benefit such income and thereafter principal from this trust as will not disqualify her from benefits available to her, unless in the sole discretion of a "Disinterested Trustee", such Trustee determines that for her overall benefit additional income and/or principal should be paid out for her benefit.

6.      The Trustees, in their sole discretion, may use and apply the net income or principal on behalf of ANDREA   directly (without the intervention of a legal guardian, conservator and/or custodian) for the uses and purposes hereinbefore stated.

(*Id.*, Articles VI-VIII).  Mrs. Dalton died in 1998, and at that time the Trust became irrevocable. (Compl., ¶ 6).  After Mrs. Dalton's death, Mr. Oetting and Defendant served as co-trustees of the Trust until Defendant resigned as trustee effective January 1, 2018.  (*Id.*, ¶ 8).  Since 2018 Mr. Oetting has served as the sole trustee of the Trust, and Plaintiff and her husband, David Barringer, have been the duly appointed guardians of Andrea since May 5, 2008.  (*Id.*, ¶¶ 9, 10; *see also* Petitions for Appointment of Successor Guardian, attached to Defendant's Motion to Dismiss as Exhs. 1-3, ECF Nos. 10-1 through 10-3).[4]

According to Plaintiff, in or around 2014 Mr. Oetting learned that Defendant was paying expenses for Andrea, including her housing and medical care at Emmaus Homes.  (Compl., ¶ 12).

---

3 According to Plaintiff, the primary beneficiary of the Trust is Andrea, the incapacitated adult daughter of Mrs. Dalton.  (Compl., ¶ 5).

4 As noted by Defendant, the Court properly may consider matters of public record in support of a motion to dismiss without converting the motion to one for summary judgment.  *See Dittmer Properties, L.P. v. Fed. Deposit Ins. Corp.*, 708 F.3d 1011, 1021 (8th Cir. 2013).

Mr. Oetting allegedly disputed Defendant's payment of the expenses, concerned they would interfere with Andrea's qualifying for government benefits and thus unnecessarily dissipate Trust assets.  (*Id.*, ¶ 13).  Around that same time Emmaus Homes advised Plaintiff, Mr. Oetting and Defendant that it intended to move Andrea to a new facility.  (*Id.*, ¶ 15).  The proposed move stood to increase Andrea's care and living expenses significantly, and thus Mr. Oetting allegedly asked Defendant repeatedly for information regarding the management of Trust assets.  (*Id.*, ¶¶ 15-16).  While Defendant provided some information, including monthly statements regarding investments and information regarding invoices from and payments to Emmaus Homes, Plaintiff claims Mr. Oetting did not receive adequate information regarding efforts to qualify Andrea for government assistance, including Social Security Disability and Medicaid payments.  (*Id.*, ¶ 17).  Plaintiff claims that despite this lack of information, in 2015 Mr. Oetting, working closely with Emmaus Homes, Plaintiff, and Mr. Barringer, prepared multiple submissions to appropriate government agencies, in order to secure government assistance that would provide for the vast majority of Andrea's living expenses indefinitely.  (*Id.*, ¶ 18).  Plaintiff claims they eventually secured such assistance, thereby saving the Trust somewhere between $60,000 and $350,000 per year on an indefinite basis. (*Id.*).

On or about November 9, 2017, Defendant provided notice that it intended to resign as co-trustee of the Trust.  (Compl., ¶ 20).[5]  On or about January 30, 2018, Defendant filed a Petition for Judicial Approval of Trustee Accounts in the Circuit Court of St. Louis County, Missouri, Probate Division (the "Wells Fargo Lawsuit").  (*Id.*, ¶ 23).  Named as Defendants were Andrea (in her capacity as primary beneficiary of the Trust); Plaintiff and David Barringer (in their capacity as co-guardians of Andrea); Arthur Rex Dalton, Jr. and Tresa Dalton (in their capacity as contingent beneficiaries of the Trust); and Mr. Oetting (in his capacity as trustee of the Trust).  (*Id.*, ¶ 24).

---

5 Defendant's resignation became effective on January 1, 2018, and Mr. Oetting has served as sole trustee since that time.  (Compl., ¶¶ 21-22).

– 4 –

Defendant voluntarily dismissed its Petition for Judicial Approval of Trustee Accounts on May 16, 2018.  (*Id.*, ¶ 25).

On or about January 24, 2020, Mr. Oetting, as trustee of the Trust, filed a Petition in the Circuit Court of St. Louis County, Missouri, Probate Division, in which he sought to recover approximately $800,000 he claimed Defendant unnecessarily spent to pay for care for Andrea, instead of obtaining available government assistance to pay for the care.  (Compl., ¶ 26).  After Defendant removed Mr. Oetting's suit to this Court, the Court dismissed Count III of Mr. Oetting's Complaint (for negligence), holding that the potential for conflict between the interests of the Trust beneficiaries, seeking to show the greatest extent of negligence/breach of trust on the part of the trustees, and the interests of Mr. Oetting, who may resist the introduction of incriminating evidence concerning his own past or present actions, led to the conclusion that he was neither the correct nor an effective advocate of the Trust beneficiaries' rights. (*See* Case No. 4:20CV302 JCH, ECF No. 21).

On or about August 25, 2020, Plaintiff filed the instant Complaint in the Circuit Court of St. Louis County, Missouri, in which she purports to bring claims "to recover funds of the Trust [] that were wrongly disbursed by the former co-trustee Wells Fargo." (ECF No. 7, P. 1).[6]  Plaintiff lodges the following claims against Defendant:  Breach of Fiduciary Duty against Wells Fargo for Using Trust Assets to Pay Andrea Dalton's Living Arrangements Instead of Obtaining Available State

---

6 Specifically, Plaintiff alleges as follows:  "Ms. Barringer brings this lawsuit against defendant Wells Fargo Bank, N.A. to recover funds that were disbursed from a special needs trust created to provide for the needs of Andrea Dalton ("Andrea"), Ms. Barringer's ward, primarily because (a) despite claiming special expertise in managing special needs trusts, Wells Fargo as trustee failed to take reasonable steps to qualify Andrea for government assistance, causing the Trust to unnecessarily dispense and waste as much as $800,000 in Trust assets; and (b) Wells Fargo also failed to provide its co-trustee attorney David Oetting with adequate information regarding Andrea's government assistance for him to properly assess or remedy Wells Fargo's mismanagement.  Ms. Dalton also brings this lawsuit to recover for certain damages caused when Wells Fargo initiated an improper, *ultra vires* lawsuit and named Ms. Barringer and her husband as defendants." (Compl., ¶

Assistance (Count I); Negligence against Wells Fargo for Using Trust Assets to Pay Andrea Dalton's Living Arrangements Instead of Obtaining Available State Assistance (Count II); Disgorgement of Fees Against Wells Fargo (Count III); Malicious Prosecution against Wells Fargo (Count IV); and Abuse of Process against Wells Fargo (Count VI[7]).

As noted above, Defendant filed the instant Motion to Dismiss on October 7, 2020, asserting Counts I and II of Plaintiff's Complaint should be dismissed because (1) Plaintiff herself (as co-guardian) had a duty to determine whether Andrea was receiving all the government benefits to which she was entitled, and to take appropriate actions to ensure that she received those benefits, and thus cannot act in the interests of the Trust's beneficiaries due to a conflict of interest, and (2) neither applicable trust law nor the trust instrument itself imposes a duty on Defendant as alleged by Plaintiff to seek out government assistance for a beneficiary. (ECF Nos. 9, 10).[8] Defendant further contends Counts IV and VI must be dismissed for failure to state a claim, as Wells Fargo acted appropriately when it sought judicial approval of the trustee accounts. (*Id.*). Finally, Defendant asserts that because it acted in accordance with the trust instrument and Missouri law, Plaintiff's claim for disgorgement fails. (*Id.*).

## DISCUSSION

### I.   Counts I and II

As noted above, in its Motion to Dismiss Defendant asserts that Plaintiff herself (as co-guardian) had a duty to determine whether Andrea was receiving all the government benefits to which she was entitled, and to take appropriate actions to ensure that she received those benefits. In light of this duty, Defendant maintains Plaintiff cannot effectively act in the interests of the Trust's

---

1).
7 There is no Count V in Plaintiff's Complaint.
8 Defendant further asserts Count II must be dismissed because the applicable statute of limitations has expired.

beneficiaries due to a conflict of interest, and so either Counts I and II should be dismissed or a guardian ad litem should be appointed.

The Court finds Defendant's conflict of interest argument raises the question of Plaintiff's standing to pursue Counts I and II of her Complaint. The Eighth Circuit has held that there exist two strands in standing jurisprudence: "'Article III standing, which enforces the Constitution's case-or-controversy requirement; and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 419 (8th Cir. 2007) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (internal citations and quotation marks omitted)).

> Whereas the Constitutional requirements focus upon the existence of a case or controversy, the prudential limitations focus upon the identity of the party-plaintiffs. That is, it is a question of whether the plaintiffs are "proper proponents of the particular legal rights on which they base their suit." *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826, 832 (1976), *Regents of Univ. of Minn. v. National Collegiate Athletic Association*, 560 F.2d 352 (8th Cir. 1977).

*School Dist. of Kansas City, Mo. v. State of Mo.*, 460 F.Supp. 421, 437 (W.D. Mo. 1978). "The prudential limitations placed on standing have been established to insure that the plaintiff is not only an aggrieved party but also an effective advocate of the issues." *Id.* at 438-39.

Upon consideration the Court holds that even if Plaintiff, as co-guardian, ordinarily would possess standing to assert the rights of certain third parties, *i.e.*, the Trust beneficiaries, "other very practical considerations and factors lead to the conclusion that critical prudential restrictions exist warranting the denial of standing to [Plaintiff]." *Id.* at 440. Of significant concern is the distinct potential for the evidence to uncover acts of negligence by Plaintiff herself. *Id.* As noted above, Plaintiff and her husband became Andrea's duly appointed guardians on May 5, 2008. (Compl., ¶ 10). In that role, Plaintiff was required to act in the best interests of her ward, and to "provide for the

ward's education, *support, and maintenance*."  *See* Mo. Rev. Stat. § 475.120(1), (2) (emphasis

added).  The statute continues in relevant part as follows:

> 3.      The general powers and duties of a guardian of an incapacitated
> person shall be to take charge of the person of the ward and to provide for the
> ward's care, treatment, habilitation, education*, support and maintenance*….
> 4.      A guardian of an adult or minor ward is not obligated by virtue of
> such guardian's appointment to use the guardian's own financial resources
> for the support of the ward.  If the ward's estate *and available public benefits*
> are inadequate for the proper care of the ward, the guardian or conservator
> may apply to the county commission pursuant to section 475.370.

*See Id.*, paragraphs (3), (4) (emphasis added).

In her Complaint Plaintiff seemingly acknowledges that during the first six years she acted as

co-guardian, she potentially did not fulfill her duties as above described.  Instead, Plaintiff claims

that only in 2014 did Mr. Oetting learn that Wells Fargo was paying certain expenses for Andrea out

of trust assets, and that he (together with Plaintiff, her husband and Emmaus Homes) then began

attempting to secure government benefits for Andrea sometime in 2015.  Thus, by her own

admission Plaintiff failed to conduct any analysis of Andrea's qualification for government

assistance prior to 2014, and failed to apply for or procure all public benefits for which Andrea was

eligible, despite her duty to ensure Andrea's continued support and maintenance.

The Court finds additional factors militate against Plaintiff acting as primary advocate of the

Trust beneficiaries' rights.  For example, the Court notes that Plaintiff carefully avoids charging Mr.

Oetting with wrongdoing, instead crediting him with unmasking Defendant's alleged misdeeds.  As

this Court previously held in Mr. Oetting's suit against Defendant, however, in his role as co-trustee

Mr. Oetting likely had as much (if not more) of an obligation to attempt to secure government

benefits for Andrea, should such an obligation exist.  Furthermore, the Court notes that upon its

dismissal of Mr. Oetting's negligence claim in Case No. 4:20CV302 JCH, his then-attorneys

requested leave to withdraw, and then promptly filed the instant suit on behalf of Plaintiff in state

court.  Said confluence of representation raises the question of whether a standing relationship between Plaintiff and Mr. Oetting may be impacting her ability to act impartially as Andrea's co-guardian.[9]

Upon consideration of the foregoing, the Court finds the potential for conflict between the interests of the Trust beneficiaries, seeking to show the greatest extent of negligence and other wrongdoing on the part of the trustees and/or guardians, and the interests of Plaintiff, who may resist the introduction of incriminating evidence concerning her own or Mr. Oetting's past or present actions, "is a very real and threatening potential."  *School Dist. of Kansas City*, 460 F.Supp. at 441. This grave concern leads to the conclusion that "even if [Plaintiff] could satisfy the constitutional requirements of standing, the prudential limitations expressed in the doctrine of jus tertii lead to the conclusion that [Plaintiff] is not the correct nor effective advocate of [the Trust beneficiaries'] rights."  *Id.* at 442.  Rather than dismiss Counts I and II, however, the Court will grant Defendant's Motion for Appointment of a Guardian ad Litem to represent the interests of Plaintiff's ward, Andrea Dalton.  The Court further will order the parties to submit simultaneous briefs, no later than Friday, January 8, 2021, outlining their suggestions regarding the manner in which the Court should select an appropriate guardian ad litem.

## II.    Counts IV and VI

In Count IV of her Petition, Plaintiff lodges a claim of malicious prosecution against Defendant.  Specifically, Plaintiff alleges that by filing the Wells Fargo Lawsuit, Defendant acted improperly because (a) it no longer was a trustee of the Trust at the time it filed the suit, and thus lacked standing to pursue the claim, or (b) even if it had standing, Defendant nevertheless failed to

---

9 This question is exacerbated by the fact that the Trust's other named beneficiary, Mr. Arthur Rex Dalton, Jr., currently is suing Mr. Oetting in state court, seeking an accounting of his actions in relation to the Trust, and his removal as trustee due to an alleged conflict of interest and failure to administer the Trust in an effective manner.  (*See* Case No. 4:20CV302 JCH, ECF No. 55).

obtain the consent of its former co-trustee, Mr. Oetting, prior to filing suit.  (Compl., ¶¶ 76-86).[10]  In

Count VI Plaintiff lodges a claim for abuse of process, based on the same allegations of misconduct.

 (*Id.*, ¶¶ 87-98).

In its Motion to Dismiss, Defendant asserts Plaintiff's claims fail because both Missouri law

and the Trust itself authorized its action in seeking judicial approval of its accounts.  Plaintiff

counters that Defendant had no right to pursue the suit as a former trustee, and further lacked

authority without obtaining the consent of a majority of the trustees. *i.e.*, Mr. Oetting.

Upon consideration of the parties' submissions, the Court finds Defendant's arguments in

favor of dismissal are more properly addressed on summary judgment, with a full record before the

Court.  The Court therefore will permit discovery on these issues.  Defendant remains free to renew

its assertions on summary judgment.

## <u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion for

Appointment of a Guardian ad Litem (ECF No. 9) is **GRANTED**, and the Court will appoint a

guardian ad litem to represent the interests of Plaintiff's ward, Andrea Dalton, with respect to Counts

I and II of Plaintiff's Complaint.

**IT IS FURTHER ORDERED** that the parties are granted until **<u>Friday, January 8, 2021,</u>**

within which to submit simultaneous briefs outlining their suggestions regarding the manner in

which the Court should select an appropriate guardian ad litem.

---

10 Plaintiff attributes the following motivation to Defendant:  "Wells Fargo improperly brought a
lawsuit against the Barringers and Andrea for which Wells Fargo knew it lacked the requisite
standing and permission from its former co-trustee Mr. Oetting to file....to avoid its obligations to
Andrea as a beneficiary and Mr. Oetting as a co-trustee, and on information and belief in an apparent
attempt to intimidate and/or otherwise improperly gain protection for its prior improper conduct."
(Compl., ¶ 84).

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (ECF No. 9) is **DENIED** without prejudice.


Dated this 23rd Day of December, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE